# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GTSI CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:06-CV-1648-VEH** |
| **ALABAMA DEPARTMENT OF** | ) | |
| **FINANCE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on: (1) Plaintiff's, GTSI Corp. ("GTSI"), Motion to Vacate the Order Dismissing the State of Alabama Department of Finance ("Department of Finance") as a Party (doc. 10); (2) Defendant's, the Department of Finance, Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 8); and (3) Defendant's, Alabama Supercomputer Authority ("ASA"), Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 6). For the reasons stated herein, the Court lacks subject matter jurisdiction over this case; accordingly, the above-styled action is due to be **DISMISSED WITHOUT PREJUDICE**.

## Facts and Procedural History[1]

GTSI is a Delaware corporation with its principal place of business located in

---

[1]As it must, the court views all facts in a light most favorable to the Plaintiffs. The facts, as presented herein, are gleaned exclusively from GTSI's Complaint (doc. 1).

Virginia and is a business that provides information technology related products and services to Federal, State, and local governments.  GTSI is a re-seller of Sun Microsystems products.

Defendant, the Department of Finance, is a governmental entity located in Montgomery, Alabama.  Defendant, ASA, is a corporation organized under the laws of Alabama with its principal place of business in Montgomery, Alabama.

GTSI asserts that this Court maintains jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1) in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

On July 22, 2005, the Department of Finance issued Invitation to Bid ("ITB") number 05-R-2158790.  The ITB solicited bids from various vendors for the costs of providing an Enterprise Storage Solution and related equipment, software, and services to the Department of Finance.  An Enterprise Storage Solution is a computer data storage system.   In the "Terms and Conditions" section of the ITB, the Department of Finance stated that the bids for the Enterprise Storage Solution were to be "F.O.B. DESTINATION."  Specifically, the ITB provided:

This equipment will be delivered F.O.B. destination to:

> State of Alabama
> Department of Finance/Information Services Division
> Room 153A

Folsom Administration Building
64 North Union Street
Montgomery, Alabama 36104

with inside delivery specified.

All references in the ITB concerning the risk of loss for shipping the equipment were "F.O.B. destination."

On August 9, 2005, GTSI submitted a proposal containing a bid of $1,689,474.52 in response to the ITB.  The proposal included a piece of equipment known as the Sun StorEdge 9985 Integrated Disk Controller and Disk Array Frame Unit (the "StorEdge").  The proposal, in compliance with the ITB, called for the shipping of all equipment, including the StorEdge, "F.O.B. destination."

Based on GTSI's proposal and on the requirements of the ITB, the Department of Finance issued Purchase Order 3311795 in the amount of $1,633,474.52 to GTSI. The Purchase Order incorporated all terms of the ITB, including the "F.O.B. destination," and stated, "F.O.B. POINT DESTINATION" and "BID IS F.O.B. DESTINATION."  Delivery, pursuant to the Purchase Order, was to be made at the address referenced in the ITB.

On August 21, 2006, GTSI commenced the above-styled action before this Court by filing a Complaint and a Petition for a Writ of Mandamus (doc. 1) against

the Department of Finance and ASA.[2]  Thereafter, on September 13, 2006, the Court

determined, *sua sponte*, that it lacked jurisdiction to enter a writ of mandamus against

the Department of Transportation and dismissed the Department of Transportation as

a party to this action (doc. 7).  On that same day, ASA filed a Motion to Dismiss for

Lack of Subject Matter Jurisdiction (doc. 6).  The following day, the Department of

Transportation filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc.

8).  On September 25, 2006, GTSI filed a Motion to Vacate this Court's Order

Dismissing the Department of Transportation as a party to this action.  A scheduling

order was entered as to each of these motions, the parties have briefed their positions,

and these matters are now ripe for review.

## Discussion

### I.    GTSI's Motion to Vacate

GTSI filed the instant motion requesting that the Court vacate the September

13, 2006, Order.  The September 13, 2006, Order denied Plaintiff's Petition for a Writ

of Mandamus against the Department of Finance on the basis that a federal court

lacks jurisdiction to enter a writ of mandamus in this case.

Specifically, the Court reasoned that:

A United States District Court has no general jurisdiction to issue a writ

---

[2]GTSI seeks a writ of mandamus against only the Department of Finance.

4

of mandamus. *See Stephenson v. Dow Chemical Co.*, 346 F.3d 19 (2d Cir. 2003); *In re McBryde*, 117 F.3d 208 (5th Cir. 1997); *In re Tennant*, 359 F.3d 523 (D.C. Cir. 2004). Under the All Writs Act, mandamus must be ancillary to or in aid of jurisdiction already acquired. *See Covington & C. Bridge Co. v. Hager*, 203 U.S. 109, 27 S. Ct. 24, 51 L. Ed. 111 (1906); *Rosenbaum v. Bauer*, 120 U.S. 450, 7 S. Ct. 633, 30 L. Ed. 743 (1887); *Graham v. Norton*, 82 U.S. 427, 21 L. Ed. 177 (1872); *In re McBryde*, 117 F.3d 208 (5th Cir. 1997); *Green v. Nottingham*, 90 F.3d 415 (10th Cir. 1996); *In re Tennant*, 359 F.3d 523 (D.C. Cir. 2004).

The federal statute conferring original jurisdiction on a federal court for actions in the nature of mandamus applies only to writs directed to officers or employees of the United States or any agency thereof and does not authorize a federal court to issue writs of mandamus to state agencies. *See* 28 U.S.C.A. § 1361; *see also Ferguson v. Alabama Criminal Justice Information Center*, 962 F. Supp. 1446, 1446 (M.D. Ala. 1997). Mandamus cannot properly issue from a federal court to a state, to a state court or its officers, or to court officials. *See Robinson v. People of State of Ill.*, 752 F. Supp. 248 (N.D. Ill. 1990) (mandamus cannot issue in action by a prisoner in a federal institution to compel the State of Illinois to respond to a motion for the removal of a detainer as the prisoner should have applied to a state court for mandamus relief); *In re Blake*, 175 U.S. 114, 20 S. Ct. 42, 44 L. Ed. 94 (1899); *Sully v. Lungren*, 842 F. Supp. 1230 (N.D. Cal. 1994); *Burke v. Green*, 422 F. Supp. 350 (E.D. Pa. 1976); *Hicks v. Brysch*, 989 F. Supp. 797 (W.D. Tex. 1997). It is therefore axiomatic that a United States District Court cannot issue a writ of mandamus to direct a state agency in the performance of its duties. *See Ferguson*, 962 F. Supp. 1446, 1446 (M.D. Ala. 1997).

GTSI argues that the September 13, 2006, Order is erroneous in that this Court maintains jurisdiction over this action pursuant to diversity jurisdiction, and GTSI asserts that a writ of mandamus is an appropriate form of relief under Alabama law for the grievances asserted against the Department of Finance.

The Court will address, *infra*, whether jurisdiction has been established pursuant to 28 U.S.C.A. § 1332.  However, if *arguendo* the mandates of § 1332 have been satisfied in this case, GTSI must nonetheless satisfy the requirements for mandamus relief under Alabama law.  *See Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1564 (11th Cir. 1992) ("A federal court sitting in diversity applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary.") (quoting *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).

Under Alabama law, a petition for a writ of mandamus is a proper legal remedy for a party seeking to compel a department of the State to pay for goods or services the State has received pursuant to a liquidated contract.  *See State of Ala. Highway Dept. v. Milton Const. Co., Inc.*, 586 So.2d 872, 875 (Ala. 1991).  The remedy of mandamus is long established under Alabama law.  *See State Board of Administration v. Roquemore*, 218 Ala. 120, 117 So. 757 (Ala. 1928) (holding that a writ of mandamus was a proper remedy for a party seeking payment from the State for hay provided to mules at a highway construction camp).

Under Alabama law, mandamus is an extraordinary remedy that will be granted when there is: (1) a clear legal right to the writ sought; (2) an imperative duty on the respondent to perform accompanied by a refusal to do so; (3) the lack of another

adequate remedy; and (4) properly invoked jurisdiction of the court.  *See Ex parte Buffalo Rock Co.*, --- So.2d. ----, 2006 WL 1119446, *3 (Ala. 2006).  However, the Alabama Supreme Court has held that the remedy of mandamus is not barred where, as in the case at bar, a party is seeking to compel, through a writ of mandamus, the State of Alabama to pay monies due for goods delivered or for services performed pursuant to a contract with the State where alternative remedies provided by the Board of Adjustment are also available.  *See Dunn Construction Co. v. State Board of Adjustment*, 234 Ala. 372, 175 So. 383 (Ala. 1937); *Dampier v. Segues*, 362 So.2d 224 (Ala. 1978).

Under Alabama law, writs of mandamus are controlled by statute.  *See* ALA. R. CIV. P. 81(a)(19).  "All applications for mandamus ... shall be commenced by a petition, verified by affidavit, in which the facts shall be stated as briefly and succinctly as the case will admit of, and any defendant may answer as to all such matters as may be necessary to his defense ...."  ALA. CODE 1975 § 6-6-640(a).  A petition for a writ of mandamus is properly denied by a trial court where the movant has not verified the petition by affidavit as required by § 6-6-640(a).  *See Ex parte Ackles*, 840 So.2d 145, 146 (Ala. 2002).[3]

---

[3]A petition for a writ of mandamus filed with an appellate court is not required to be verified by affidavit.  *See Ex parte Johnson*, 485 So.2d 1098, 1106 (Ala. 1986).  In *Ex parte Johnson*, the Alabama Supreme Court held that verification by affidavit was not required when a

In the instant case, GTSI's petition for a writ of mandamus, while a form of relief authorized by Alabama law, is not verified by affidavit as required by ALA. CODE 1975 § 6-6-640(a).  Pursuant to the Alabama Supreme Court's holding in *Ex parte Ackles*, the lack of verification is an incurable defect.  *See Ex parte Ackles*, 840 So.2d at 146.  As a matter of law, GTSI's petition for a writ of mandamus is due to be denied provided that this Court has subject matter jurisdiction over GTSI's claim against the Department of Finance.  GTSI's petition for a writ of mandamus is the sole claim asserted against the Department of Finance; as such, the Department of Finance would remain dismissed as a party to this action, though for reasons different than those stated in the September 13, 2006, Order.

## II.   The Department of Finance's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The analysis of GTSI's claims against the Department of Finance must include a discussion of whether the Court maintains subject matter jurisdiction over this action.  The Department of Finance has presented, through its papers, challenges to this Court's subject matter jurisdiction, and GTSI defends against those challenges.

---

party sought mandamus relief from an appellate court in that the Alabama Rules of Appellate Procedure specifically set out requirements for petitions for a writ of mandamus that differ from § 6-6-640(a), and the court held that the Alabama Rules of Appellate Procedure governed. Where, as in the instant case, a party is seeking mandamus relief from a trial court, the court is governed by the Alabama Rules of Civil Procedure.  As ALA. R. CIV. P. 81(a)(19) states that mandamus will be governed by statute, the court is bound by the provisions of § 6-6-640(a) and by the authoritative case law as to that statute.

The Department of Finance contends that this Court lacks subject matter jurisdiction over GTSI's sole breach of contract claim in that the Department of Finance is a department of the State of Alabama and is, thus, entitled to Eleventh Amendment immunity as well as to sovereign immunity pursuant to the Alabama Constitution.  GTSI counters that the Department of Finance is not an alter ego or instrumentality of the State but that it is a public entity or political subdivision of the State and, as such, is outside the shield provided by the Eleventh Amendment.  GTSI maintains that the Department of Finance cannot demonstrate that it is an "arm of the State" at this point in time; thus, GTSI contends that it can properly maintain a breach of contract action against the Department of Finance in federal court.

GTSI's argument that the Department of Finance is not an "arm of the State" is contradicted by GTSI's contention, contained in its opposition to the ASA's Motion to Dismiss, that the Department of Finance is a department of the State of Alabama and that any suit initiated by the Department of Finance or by a party acting as a fiduciary of the Department of Finance is tantamount to a suit commenced by the State of Alabama itself.  (Doc. 9 at ¶¶ 3, 6).  In its opposition to the ASA's Motion to Dismiss, GTSI argues that, while it cannot maintain an action on its own behalf in federal court against the ASA in that the ASA is entitled to the State of Alabama's sovereign immunity, GTSI can sue the ASA while acting as a fiduciary for the

Department of Finance.  (Doc. 9 at ¶ 6).  GTSI reasons that a suit against the ASA by a department of the State of Alabama, in this case the Department of Finance, is equivalent to a suit against the ASA commenced by the State of Alabama, and that, since ALA. CODE § 41-10-396(2) does not expressly prohibit suits against the ASA by the State of Alabama, an action commenced by GTSI acting as a fiduciary for the Department of Finance will circumvent the ASA's entitlement to sovereign immunity. (Doc. 9 at ¶ 6).  GTSI cannot have it both ways.  Either: (1) the Department of Finance is immune from suit by virtue of its being an "arm of the State," thereby blanketing the Department of Finance in Eleventh Amendment immunity and rendering GTSI's arguments against ASA's Motion to Dismiss potentially feasible; or (2) the Department of Finance is not an "arm of the State," thereby potentially exposing the Department of Finance to liability and rendering GTSI's arguments asserted in opposition to the ASA's motion untenable.

Having said this, it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.  *Simanonok v. Simanonok* 787 F.2d 1517, 1519 (11th Cir. 1986). Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: (1) "facial attacks" and (2) "factual attacks."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

Facial attacks on a complaint demand that "the court merely to look and see if

[the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations of his complaint are taken as true for the purposes of this motion." *Id.* It is this situation with which the Court is currently presented.

In contrast, factual attacks "challenge the existence of subject matter jurisdiction on fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997). "On a factual attack on subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of a plaintiff's cause of action." *Id.* If the facts do not go to the merits of the plaintiff's cause of action:

> [T]he trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

If an attack on subject matter jurisdiction also implicates an element of the

11

cause of action:

> [T]he proper course of action for the district court ... is to find that
> jurisdiction exists and deal with the objection as a direct attack on the
> merits of the plaintiff's case.... Judicial economy is best promoted when
> the existence of a federal right is directly reached and, where no claim
> is found to exist, the case is dismissed on the merits.  This refusal to
> treat indirect attacks on the merits as Rule 12(b)(1) motions provides,
> moreover, a greater level of protection to the plaintiff who in truth is
> facing a challenge to the validity of his claim: the defendant is forced to
> proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great
> restrictions on the district court's discretion ... [A]s a general rule a
> claim cannot be dismissed for lack of subject matter jurisdiction because
> of the absence of a federal cause of action.  The exceptions to this rule
> are narrowly drawn, and are intended to allow jurisdictional dismissals
> only in those cases where this federal claim is clearly immaterial or
> insubstantial.

*Williams v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981).[4]

As a facial matter, the Eleventh Amendment provides a State immunity from

suit by limiting a federal court's power over the case.  *See* U.S. Const. Amend. XI.

A State cannot be sued in federal court without the State's consent.[5]  *See Manders v.*

*Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  A defendant need only be an "arm of the

State" to enjoy Eleventh Amendment immunity.  *See id.*  "Whether a defendant is an

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981.

[5]The parties do not assert that Congress has overridden Alabama's immunity with regard to the state law claims asserted against the Department of Finance or against the ASA nor has the State of Alabama consented to be sued or waived its immunity as to GTSI's claims.

'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id*. (citing *Shands Teaching Hosp. & Clinics v. Beech St. Corp.,* 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or role in a particular context.")).

When a question arises as to whether an entity is an "arm of the State" for purposes of Eleventh Amendment immunity, a district court employs four factors to determine whether such entity is an "arm of the State" in carrying out the particular function at issue in the litigation: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.  "The issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law." *Id*.

In the instant action, GTSI has asserted a state law claim for monetary relief against the Department of Finance.  It is well-settled that departments of a State are entitled to the State's Eleventh Amendment immunity protection.  The Supreme Court has noted:

> This Court's decisions thus establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."  There may be a question, however,

whether a particular suit in fact is a suit against a State. ***It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.*** This jurisdictional bar applies regardless of the nature of the relief sought.

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984) (internal citations omitted) (emphasis added); *see also Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939 (1986); *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Department of Finance is a department of the State of Alabama, and a suit against the Department of Finance is, accordingly, an impermissible suit against the State of Alabama itself. As such, this Court lacks subject matter jurisdiction pursuant to Eleventh Amendment immunity, and GTSI's claim against the Department of Finance is due to be dismissed without prejudice.

In addition, there is another jurisdictional defect within GTSI's Complaint against the Department of Finance. GTSI has invoked this Court's jurisdiction pursuant to 28 U.S.C.A. § 1332. The Department of Finance asserts that, as a department of the State of Alabama, it is not a citizen of any state for the purposes of establishing diversity jurisdiction; rather, it is the Department of Finance's position that a suit against it is a suit against the State of Alabama. The parties do not dispute

that the amount in controversy requirement of § 1332 has been satisfied.  Absent diversity, this Court lacks jurisdiction over GTSI's claims against the Department of Finance.

A state is not a citizen of any state for purposes of diversity jurisdiction under 28 U.S.C.A. § 1332.  *See Moor v. Alameda County*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).  A public entity or political subdivision of a state, unless it is an "arm or alter ego" of the state, is, however, a citizen of the state for diversity purposes.  *See Moor*, 411 U.S. at 717-18.  Where the entity is found to be merely the instrumentality, arm, or alter ego of the state, a suit against the entity is, in effect, a suit against the state for purposes of diversity analysis.  *Id.*  28 U.S.C.A. § 1332 requires that a federal court shall have jurisdiction over civil actions commenced against "citizens" of a state.  Because states are never subject to diversity jurisdiction, a state cannot be named as a defendant in a suit brought under § 1332.  *See U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 492-494, 499-500 (1st Cir. 2000). Therefore, it is axiomatic that a suit brought solely against a state or an "arm of the State" cannot proceed in federal court exclusively under the banner of diversity jurisdiction.

GTSI argues that the Department of Finance is not an "arm or alter ego" of the State of Alabama, thus, it is GTSI's position that the Department of Finance is a

citizen of Alabama for diversity purposes.

As discussed *supra*, in the context of Eleventh Amendment immunity, the Department of Finance is a department or "arm of the State" and is immune from suit in federal court. "However, the question of diversity jurisdiction is distinct from that of immunity." *Alabama State University v. Baker & Taylor, Inc.*, 998 F.Supp. 1313, 1315 (M.D. Ala. 1998) (citing *Parks v. Carrier Consol. School Dist.*, 12 F.2d 31, 38 (5th Cir. 1926). While the questions are distinct, under the reasoning of *Alabama State University*, the analysis employed in either instance is identical.

In *Alabama State University*, the district court noted that "the Eleventh Circuit has recognized the similarity of analysis for determining whether a public entity is an instrumentality of the state for purposes of Eleventh Amendment immunity and diversity-of-citizenship jurisdiction." *Id.* at 1316 (citing *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals*, 695 F.2d 1315, 1318 (11th Cir. 1983) (holding that the analysis for determining whether the Florida Board of Trustees of the Internal Improvement Trust Fund is a "citizen" for the purpose of diversity jurisdiction is identical to the analysis employed for determining whether the entity could invoke the Eleventh Amendment immunity doctrine) ("Although the determination made by the court in [*Aerojet-General Corporation v. Askew,* 453 F.2d 819 (5th Cir. 1971)] concerned [E]leventh [A]mendment immunity, we conclude that the analysis for

determining the Board's status as a "citizen" for the purposes of diversity is the same").  Relying on the Eleventh Circuit's holding in *Coastal Petroleum Co.*, the court in *Alabama State University* found that, because Alabama State University and Alabama A&M are alter egos of the State of Alabama for purposes of Eleventh Amendment immunity, those same entities are alter egos or instrumentalities of the state for purposes of determining diversity jurisdiction, and concluded that, as neither was a citizen of any state, the court lacked subject matter jurisdiction over the case.

This Court agrees with *Alabama State University* that the Eleventh Circuit has recognized that the analysis for determining whether a public entity is an instrumentality of the state for purposes of Eleventh Amendment immunity and the analysis for determining whether a state entity is a "citizen" of that state are identical. Applying the holding in *Coastal Petroleum Co.*, this Court finds that, when a suit is barred against an alter ego or instrumentality of the state by Eleventh Amendment immunity, the same alter ego or instrumentality is not a "citizen" of the state for the purposes of establishing diversity jurisdiction.  *See id*.  Therefore, as GTSI's suit against the Department of Finance is barred by Eleventh Amendment immunity, the Department of Finance is not a "citizen" of the State of Alabama for the purpose of establishing diversity jurisdiction.  As this action is not a suit between "citizens" of different states but is a suit against a department of the State of Alabama, this Court

17

lacks diversity jurisdiction over GTSI's action against the Department of Finance in that a department of the State cannot be a defendant to a suit filed pursuant to § 1332. *See U.S.I. Properties Corp.*, 230 F.3d at 492-494, 499-500. GTSI's action against the Department of Finance is, alternatively, due to be dismissed without prejudice for want of diversity jurisdiction.

## III.   The ASA's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court now turns its attention to GTSI's claims against the ASA. GTSI contends that it is commencing this action against the ASA not on its own behalf but as a derivative claim on behalf of the Department of Finance pursuant to ALA. CODE 1975 § 7-2-722. GTSI maintains that, under this section, it has standing as the fiduciary of the Department of Finance to bring suit against the ASA for the damages GTSI alleges that the ASA negligently inflicted on the StorEdge.

ALA. CODE § 7-2-722 states:

Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract:

(a) A right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other;

(b) If at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no

18

arrangement between them for disposition of the recovery, his suit or settlement is, subject to his own interest, as a fiduciary for the other party to the contract;

(c) Either party may with the consent of the other sue for the benefit of whom it may concern.[6]

GTSI's position is that the ASA is a third party who dealt with the StorEdge in such a manner as to cause actionable injury to the Department of Finance and to GTSI, the two parties to the contract for the sale of the StorEdge. According to GTSI, at the time the StorEdge was damaged, the Department of Finance bore the risk of loss under the contract between the Department of Finance and GTSI. Thus, GTSI maintains that it, as a party plaintiff to the case at bar, brings this suit against the ASA as a fiduciary of the Department of Finance.

Without reaching the merits of GTSI's assertion that it may properly bring an action against the ASA on behalf of the Department of Finance, the Court notes that it must possess jurisdiction over the underlying action before this case may proceed in a federal forum. GTSI concedes that, pursuant to ALA. CODE 1975 § 41-10-396(2), the ASA enjoys the same Eleventh Amendment immunity and state sovereign immunity as does the State of Alabama.[7]  GTSI's concession is consistent with the

---

[6]The parties have not represented that GTSI has obtained the Department of Finance's consent to file suit, on behalf of the Department of Finance, against the ASA.

[7]ALA. CODE 1975 § 41-10-396(2) discusses the enabling and powers of the ASA generally and states, in relevant part, that the ASA shall have the power "[t]o institute legal proceedings in any court of competent jurisdiction to enforce its contractual, statutory and other

plain language of § 41-10-396(2).

Complementary to GTSI's concession, in applying the four *Manders* factors to the ASA, it is clear that the ASA is an "arm of the state" for Eleventh Amendment immunity purposes.  *See Manders*, 338 F.3d at 1309.  All four of the *Manders* requirements weigh in favor of Eleventh Amendment immunity for the ASA.

First, the Court looks at how state law defines the ASA.  *See id.*  The ASA was created, pursuant to ALA. CODE 1975 § 41-10-390, et seq., by Act No. 704 of the Alabama Legislature, Regular Session 1989, which authorizes the ASA's status as a public corporation of the State of Alabama.  The Alabama Code specifically states that the ASA is an "instrumentality of the State of Alabama" and further provides that the ASA "is entitled to the sovereign immunity of the state." *See* ALA. Code 1975 § 41-10-396(2).  There can be no doubt, based on the definitive language of § 41-10-396(2), that the Alabama Legislature intended the ASA to be an "arm of the State" and thus entitled to Eleventh Amendment immunity from suit in federal court.

Second, the Court must assess the level of control exercised over the ASA by the State of Alabama.  *See Manders*, 338 F.3d at 1309.  ALA. CODE 1975 § 41-10-

---

rights; provided that the authority shall be considered an instrumentality of the State of Alabama and entitled to the sovereign immunity of the state; provided further, that any claim, demand or action against the authority, or any of its directors, officers, employees or agents arising out of their official capacities, shall be presented to the Board of Adjustment, which shall have exclusive jurisdiction of any such claim, demand or action."

390, et seq., reveals that the State of Alabama exercises strict control over the ASA. The ASA was created by statute. *See* ALA. CODE 1975 § 41-10-390 ("This article shall be known as the Alabama Supercomputer Authority Act."). The ASA was established to "promote the prosperity and general welfare" of the citizens of Alabama, and its duty is to "establish, administer and operate such supercomputer system for the primary purpose of providing state-of-the-art technology in supercomputer processing for scientific research and development to governmental agencies, educational institutions, private-sector businesses and industries." *See* ALA. CODE 1975 § 41-10-391. The Alabama Legislature dictated that the ASA's principal office shall be located in Montgomery, Alabama. *See* ALA. CODE 1975 § 41-10-393. By statute, the ASA is controlled by a board of directors; further, the rules dictating the responsibilities of the board of directors are codified and the members of the board include the Alabama Director of Finance, the Director of the Alabama Development Office, the Chancellor of the Post Secondary Education Department, and the State Superintendent of Education. *See* ALA. CODE 1975 § 41-10-395. The Governor, Lieutenant Governor, and the Speaker of the House also have the authority to appoint members of the board of directors. *See id*. The ASA and its employees do not maintain a proprietary interest in any product or intellectual property developed or utilized by the ASA. *See* ALA. CODE 1975 § 41-10-398. Essentially, every facet

21

of the ASA is somehow touched or controlled by state statute.

Third, the Court must determine how the ASA is funded.  *See Manders*, 338 F.3d at 1309.  The ASA derives its funds exclusively from the State Treasury.  ALA. CODE 1975 § 41-10-400 establishes in the State Treasury "a special fund to be known as the 'Supercomputer System Fund', [sic] which shall be used exclusively for the operation of the [ASA]. All fees, charges, grants, gifts, appropriations or other moneys received by the [ASA] from any source whatsoever shall be deposited in said fund."

Finally, the Court must determine whether the State of Alabama will ultimately have to honor any judgment against the ASA.  *See Manders*, 338 F.3d at 1309.  GTSI has filed a suit seeking monetary relief from the ASA.  As noted *supra*, the ASA derives its funds solely from the State Treasury, and any judgment against the ASA would necessitate payment by the State Treasury.  *See Manders,* 338 F.3d at 1327 n. 51 (noting that, under Supreme Court precedent, "the state treasury factor is a "core concern" of Eleventh Amendment jurisprudence"); *see also Zabriskie v. Court Admin.*, 172 Fed. Appx. 906, 908 (11th Cir. 2006).

In addition to GTSI's concession that the ASA is entitled to the Eleventh Amendment immunity from suit enjoyed by the State of Alabama, the *Manders* analysis weighs in favor of such immunity for the ASA.  GTSI contends that, as a

22

fiduciary of the Department of Finance, any immunity that is afforded to the ASA is inapplicable where the Department of Finance is pursuing a suit against the ASA in that § 41-10-396(2) does not specifically preclude the Department of Finance or any other state department from pursuing, in court, a claim against the ASA.   This contention fails for two reasons.

First, the parties do not cite and the Court is unaware of any authority supporting the proposition that an exception to Eleventh Amendment immunity exists in a situation in which a state sues an entity of that same state in federal court when the entity would otherwise be entitled to Eleventh Amendment immunity.   Second, the Court disagrees with GTSI's interpretation of § 41-10-396(2), that silence with regard to suits brought in a court against the ASA by the Department of Finance is tantamount to permission for the Department of Finance or an entity acting as a fiduciary of the Department of Finance to commence such an action.   To the contrary, the statute expressly prohibits any party from filing an action against the ASA in any court.   Specifically, § 41-10-396(2) provides "that any claim, demand or action against the [ASA], or any of its directors, officers, employees or agents arising out of their official capacities, shall be presented to the Board of Adjustment, which shall have exclusive jurisdiction of any such claim, demand or action."   Under Alabama law, the Board of Adjustment maintains "exclusive jurisdiction" over all claims

23

against the ASA, thereby rendering meritless GTSI's contention that this Court maintains jurisdiction over the case at bar due to the silence of § 41-10-396(2) as to claims against the ASA by departments of the State of Alabama.  As such, this Court lacks jurisdiction over GTSI's claims against the ASA due to the ASA's entitlement to Eleventh Amendment immunity and pursuant to § 41-10-396(2).

This action is brought pursuant to this Court's diversity jurisdiction.  GTSI has not and, indeed, cannot establish that the necessary elements of § 1332 have been satisfied as to its claims against the ASA.  The ASA is entitled to Eleventh Amendment immunity and, as discussed *supra*, is therefore an "arm of the State" and cannot be a citizen of the State of Alabama for purposes of diversity jurisdiction.  As the ASA cannot be a defendant under § 1332, this Court alternatively lacks subject matter jurisdiction over GTSI's suit against the ASA, whether brought by GTSI individually or by GTSI acting as a fiduciary of the Department of Finance, in that the ASA is not a citizen of any state for the purposes of § 1332.  *See U.S.I. Properties Corp.*, 230 F.3d at 492-494, 499-500.

## Conclusion

A separate Final Order will be entered consistent with this Memorandum Opinion.

**DONE** this 30th day of November, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge